*Decisions will be entered under Rule 50.*

VANGUARD RECORDING SOCIETY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 371–67. Filed February 20, 1969.

*Jerome Kamerman*, for the petitioner.
*Jay S. Hamelburg*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in petitioner's income tax for the taxable year ended March 31, 1963, in the amount of $4,407.40.

The issue is: Did petitioner receive $8,475.75 income when it credited its earned surplus by that sum and debited its accounts payable by the same sum?

### FINDINGS OF FACT

Some of the facts have been stipulated and they are found accordingly.

Petitioner is a New York corporation with its office and principal place of business in New York City at the time it filed its petition. It filed its income tax return for the period ended March 31, 1963, with the district director of internal revenue, Manhattan District, New York. It keeps its books and reports its income on the accrual method. Petitioner does a substantial business in manufacturing and distributing phonograph records at wholesale. Its return for the year involved shows a United States income tax of around $150,000 and income tax paid to six foreign countries: Argentina, Israel, Colombia, Japan, South Africa, and Austria.

In prior years petitioner reported its income on the basis of a fiscal year ended April 30. Beginning with the fiscal year ended April 30, 1957, petitioner's books show each year up to 1963 that the control account in the general ledger of accounts payable exceeded the subsidiary schedule of accounts payable by the sum of $8,475.75. The accountant employed to audit the books beginning with the year ended April 30, 1957, merely made a small pencil notation of $8,475.75 on the books each year indicating that was the sum by which the control account exceeded the schedule of accounts payable.

In the taxable year ended March 31, 1963, petitioner's books show that its accounts payable were debited by $8,475.75, and its earned surplus was credited by the same sum.

Respondent determined petitioner received income in the amount of $8,475.75 and in his notice of deficiency explained the adjustment as follows: "It has been determined that you received income resulting from the credit to earned surplus of accrued expenses deducted in a prior year."

### OPINION

It has long been the uniform holding of the courts that where items have been accrued and deductions taken such as for wages, merchandise, taxes, etc., and in a later year recovered in whole or in part, the amount recovered must be reported as income. See *Estate of William H. Block*, 39 B.T.A. 338 (1939), affd. 111 F. 2d 60 (C.A. 7,

1940), certiorari denied 311 U.S. 658 (1940), citing some 24 opinions, including opinions of the Supreme Court, all holding the *recovery* of a previously deducted item constitutes income.

"Recovery" in the later year of the previously deducted obligation does not necessarily mean the obligation was canceled or forgiven in that year. The unpaid obligation is "recovered" by the taxpayer when it can be shown he is no longer obligated, and in any event, when it is removed from bills payable and the amount of the obligation credited to surplus.

Petitioner argues it received no income but in any event it could not be income in the fiscal year 1963. The argument is that the discrepancy occurred prior to May 1, 1957, and for this reason there could be no income in fiscal 1963 for all that occurred in 1963 was that adjustment entries were made and such entries do not create income. The argument is without substance. Bookkeeping entries do not create income but they can mark the year when a previously deducted item is restored to income by the taxpayer.

In *Fidelity-Philadelphia Trust Co.*, 23 T.C. 527, 529 (1954), a bank transferred unclaimed deposits to its surplus in 1948. We held the bank received income that year. We said the book entries alone cannot determine income "But the book entries * * * are not without significance. They mark the point of time when it is reasonable to conclude * * * the unclaimed deposits will not in fact be paid * * *."

In *Providence Coal Mining Co.* v. *Glenn*, 88 F. Supp. 975 (W.D.Ky. 1950), the taxpayer carried an "unclaimed payroll account" which arose by reason of workmen leaving their employment and not calling for pay due them. It had accumulated $342.12 over a period of 25 years. When this amount was paid into surplus in 1943 the court held this was the year for its inclusion in income.

In *North American Coal Corporation*, 32 B.T.A. 535 (1935), affd. 97 F. 2d 325 (C.A. 6, 1938), the taxpayer carried what it called an "Unclaimed Coal Liability Account." It arose by reason of transshipment of coal from cars to boats and the listing of cars to its credit on shipping manifests that did not appear on its shipping records. The identity of the possible claimants was unknown to the taxpayer. The Court held taxpayer received income in the year the balance in this account was transferred to surplus.

In *Lime Cola Co.*, 22 T.C. 593 (1954), the taxpayer in 1930 purchased extract for $1,294.65. It did not pay the account because of poor quality. It carried the purchase price in its accounts payable until 1942 when it eliminated the account from its accounts payable and credited the $1,294.65 to its surplus. We held the taxpayer received income in 1942 when the debit was made to accounts payable and the credit was made to surplus.

It is true that the basis for including the credit to surplus in the taxpayer's income is that it had been deducted previously to offset income. In the instant case there is no direct evidence that the $8,475.75 was ever used as a deduction in computing income. All we have is the evidence of petititioner's account, who is a certified public accountant, who found what he calls the discrepancy of $8,475.75 when he took over the audit of petitioner's books on April 30, 1957. He said he "discussed it with the principals of Vanguard and informed them of the discrepancy." He said "They asked me to find it, if I could, and in any event to use my own discretion as to just how to handle it." He said the earlier records were available at this time and he made "a cursory attempt to find it" and he "instructed the bookkeeper to go through all the records at any time he had a free moment to try to discover it." The accountant said he did not find the discrepancy and the bookkeeper did not testify. At any rate the accountant chose to handle the discrepancy by a pencil notation each year and continuing the total in the control accounts payable account $8,475.75 in excess of the total of the listed subsidiary accounts payable. The accountant would not quite say this was "normal" to let such entries run for 6 or 7 years but he said he had often seen differences in a control account and a schedule of accounts (even amounting to $8,000) and he added "the client certainly doesn't want to pay us to spend our time to keep searching for it, not at our rates, and we instruct the bookkeeper, try to find it if you can."

It is obvious that the accountant's pencil notation method of handling the so-called discrepancy would have the merit of keeping the credit out of income as long as the books would remain unaudited by the Government or uncertified by a certified public accountant.

He states this certified statement was requested by petitioner in 1963 which is the reason the debit to accounts payable and the credit to surplus was made that year.[2] By that time the records for the 3 fiscal years prior to April 30, 1956, could not be located. It fairly appears from the record that this so-called discrepancy arose sometime during this 3-year period and that the books for this 3-year period were available in 1957 when the accountant took over the audit of petitioner's books.

---

[2] Petitioner's return for the year in question shows it had an employee's profit sharing plan approved by the Commissioner that year and it made contributions to the plan and took deduction under sec. 404(a), I.R.C. 1954. It is significant that the Commissioner's regulations governing requests for qualifications of such plans call for balance sheets for the last 2 years, comparative statements of income profit and loss for the last 5 years, and analysis of surplus for the last 5 years. See Rev. Proc. 69–4, sec. 4, Instructions to Taxpayers .05, I.R.B. 1969–1.

Petitioner seems to feel that because there is no evidence that the $8,475.75 was once used as a deduction in computing income such cases as *Providence Coal Mining Co.* v. *Glenn, supra, North American Coal Corporation, supra,* and *Estate of William H. Block, supra,* and the many cases cited in the last named opinion have no application. Petitioner seems to argue that it was somehow respondent's burden to show the $8,475.75 had once been deducted. He states on brief:

Respondent did not present any proof to show that a purchase was involved with respect to the discrepancy nor did respondent present any other proof which would show that the discrepancy arose from any deduction taken in a prior year.

A short answer to petitioner's argument is that in the absence of evidence to the contrary it must be assumed that the petitioner, on the accrual method of accounting, previously deducted the $8,475.75 shown on its books for many years as an account payable item. Respondent had no burden to show that a deduction in the sum of $8,475.75 had been taken in a prior year. The presumption of correctness that attaches to respondent's determination of deficiency casts the burden on petitioner to show that an item carried in its accounts payable ledger for many years was not once used to offset income.

The same argument was advanced in *Lime Cola Co., supra.* There as here the books for the early years were not available and there was no evidence that the debit to accounts payable and the credit to surplus was the debit and credit of an item that had once been used as a deduction. The opinion holds that "petitioners here bear the burden of proving the deduction was *not* taken." The opinion goes on to hold that "they have failed [in their burden] since the record is silent on the matter."

There is also no merit in petitioner's contention to the effect that respondent had some sort of burden to show that a "purchase was involved." Indeed the item could be income when taken into surplus if no purchase was involved at all. It could have been rent, wages, or taxes or any other business obligation. In any event, respondent had no obligation to show what the item was or who the obligee was. To so hold would put a premium on vague, unclear, and indefinite book entries.

Respondent was perfectly justified in assuming this accounts payable item in the sum of $8,475.75 had once been deducted. The burden was on petitioner to prove that it was not. The fact that the books are now unavailable does not, as stated in *Lime Cola Co., supra,* "alter the consequences of petitioners' failure of proof." We hold for respondent on the issue presented.

*Decision will be entered for the respondent.*