**VANGUARD RECORDING SOCIETY,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 67, Docket 33461.**

United States Court of Appeals
Second Circuit.

Argued Sept. 30, 1969.

Decided Nov. 26, 1969.

Jerome Kamerman, New York City, for petitioner-appellant.

Janet R. Spragens, Atty., Tax Division, Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, on the brief), for respondent-appellee.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

### J. JOSEPH SMITH, Circuit Judge:

Taxpayer is a New York corporation which keeps its books on an accrual basis. From 1957 to 1963 taxpayer's accounts payable control account exceeded the total of the individual accounts payable by $8,475.75. Taxpayer was aware of this, but allowed the discrepancy to be carried on its books (noted only by a pencil entry in the control account) until it had to have a certified accountant's report, in which no discrepancies could be carried. So for the tax year ending March, 1963, taxpayer debited the accounts payable control account so it would accord with the individual accounts and credited the same amount directly to earned surplus. Since this amount was not taken through an income account, the Commissioner sent a notice of deficiency on October 27, 1966, on the ground that the credit to earned surplus in 1963 was the recovery of accrued expenses which had been deducted in a year prior to 1957. The Tax Court, Mulroney, Judge, approved of the Commissioner's determination in a written opinion. (51 T.C. 819 (February 20, 1969).) We find error and reverse and remand with instructions.

The facts are not in dispute. The discrepancy was first noticed in 1957, when taxpayer hired a new accountant. He made a "cursory" attempt to locate the source of the problem, but was unsuccessful. At trial, he speculated that the discrepancy arose through common careless bookkeeping—for example, "forcing" a balance by arbitrarily increasing the control account—but since the books for years prior to 1957 were no longer available he was unable to be more definite or to testify as to the initial tax consequences of the discrepancy. Both sides agree that if the excess in the control account had been expenses accrued and deducted by taxpayer prior to 1957, then the recovery of that amount now by book recognition that no obligation is owed and by crediting earned surplus would give rise to income in the year recovered. Providence Coal Mining Co. v. Glenn, 88 F.Supp. 975 (W.D.Ky.1950); Lime Cola Co. v. Commissioner of Internal Revenue, 22 T.C. 593 (1954); cf. Fidelity-Philadelphia Trust Co. v. Commisioner of Internal Revenue, 23 T.C. 527 (1954); Internal Revenue Code of 1954, § 61(a) (12), 26 U.S.C. § 61(a) (12) (1967).

The Commissioner contends that the burden is on taxpayer to establish that a deduction was not taken. Whether a deduction was taken, however, is not the question here, for if an earlier deduction was erroneously taken, the policy of the statute of limitations would prevent the Commissioner from recovering on the basis of the erroneous deduc-

tion now,[1] Mertens, Law of Federal Income Taxation, § 7.34, at 88 (rev. ed. Zimet & Oliver 1962); cf. Commissioner of Internal Revenue v. Schuyler, 196 F.2d 85, 87 (2d Cir. 1952), while if an earlier deduction was in fact properly taken, it must have been for a definite liability fixed at the time. If there was such a liability and it was forgiven, forgotten or eliminated in some manner in 1963, income was then realized by the taxpayer whether or not he took a deduction earlier. The question of the earlier deduction is therefore not controlling here. What is in issue is whether there actually was a preexisting debt and, if there was, whether it was forgiven in 1963 or the taxpayer wrote it off then because he determined that it could not or would not be enforced. There is a complete lack of evidence that the taxpayer so determined. The only evidence, apparently credited by the Tax Court, was that the write-off in 1963 was solely for the purpose of balancing the books. There is no real reason to believe that there ever was a debt in the first place. The examination of the books by the bookkeepers or accountants, however cursory it may have been, should at least have turned up the account from which this amount had been dropped if it existed. And since there was no evidence such a debt ever existed, there is no indication that there was in 1963 or at any other time a forgiveness of a debt or a determination that it could no longer be enforced.

The Commissioner relies on Lime Cola v. Commisssioner of Internal Revenue, 22 T.C. 593 (1954). In that case flavoring was purchased in 1930, was found to be defective and never paid for. The purchase price was written off from accounts payable in 1942 and credited to earned surplus. The 1930 books were not available at the time of trial. The taxpayer was held not to have met his burden of showing that he had not taken a deduction in 1930. That case is, of course, distinguishable from this, for in *Lime Cola* the source of the bookkeeping entry was known to be the purchase of flavoring, and the Tax Court was entirely justified in assuming that this item had been deducted in the absence of contrary proof. Here we do not know the nature of the item or indeed whether one existed.

This case more closely resembles Pittsburgh Industrial Engineering Co. v. Commissioner, 9 T.C.M. 1132 (1950) where the Commissioner sought to treat as income in 1941 book adjustments in control accounts to actual detail as of December 31, 1941 and January 1, 1942, reflecting a net increase in surplus. Since all the amount reflected in the book adjustments resulting in the increase in net surplus arose before 1941, it was held error to include it in income in the taxable year 1941, the Tax Court stating: "The petitioner did not attempt to show in what year or years prior to 1941 the amount reflected in the net surplus increase accumulated, nor do we think it was required to do so, since the year 1941 is the one before us."

It is contended that a ruling in favor of the taxpayer is a reward and encouragement for sloppy bookkeeping. This does not follow. If an account payable should be dropped out in any year by a taxpayer, he would have to pick one which he could predict would be eventually forgiven or forgotten by a creditor, a highly dubious undertaking.

1. Even if taxpayer in *Lime Cola* had not taken a deduction for the goods in 1930, the recovery of the debt owed by the writing-off of the account payable in 1942 may have given rise to income in that year. The fact that taxpayer failed to take advantage of an available deduction in 1930 would not seem to detract from the conclusion that the discharge from indebtedness in 1942 was income. This is most clearly seen if it is posited that no deduction was taken in 1930 since the taxpayer had no taxable income in that year. Of course if the taxpayer in *Lime Cola* could have shown that no deduction was taken in 1930 then it could have argued that it only recovered the value of the defective goods (since that was the measure of its obligation under contract law) and not the full amount of the account payable.

In the case at bar, of course, there is no question at all raised as to the taxpayer's good faith. Bad faith would put the matter in a different light and raise the possibility of criminal and civil fraud remedies and tolling of limitations.

■ The Commissioner's determination that the correcting entry represented a cancellation of an indebtedness constitutes only his self-serving speculation. A determination which is only this should not cast the burden of rebuttal on the taxpayer. See Helvering v. Taylor, 293 U.S. 507, 514–515, 55 S.Ct. 287, 79 L.Ed. 623 (1935). The Commissioner's determination must be set aside as purely arbitrary.

The decision of the Tax Court is reversed with instructions to enter judgment for the taxpayer disallowing the deficiency assessment.