HAL LACKEY and MURIEL B. LACKEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lackey v. Commissioner
Docket No. 5274-73.
United States Tax Court
T.C. Memo 1976-298; 1976 Tax Ct. Memo LEXIS 105; 35 T.C.M. (CCH) 1330; T.C.M. (RIA) 760298; September 22, 1976, Filed Hal Lackey, pro se. Albert L. Sandlin, Jr., for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in the Federal income tax of petitioners in the amount of $10,297.13 and an addition to tax under section 6653(b) [1] of $5,148.56 for the year 1966. The issues remaining for decision are as follows: (1) Whether petitioners understated taxable income in the amount of $23,737.07 in the taxable year 1966. *106 (2) Whether any part of the underpayment of taxes for taxable year 1966 is due to fraud within the meaning of section 6653(b). [2]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Hal and Muriel B. Lackey filed a joint Federal income tax return for calendar year 1966 with the District Director of Internal Revenue, Baltimore, Maryland. At the time the petition in this case was filed, petitioners resided in Myrtle Beach, South Carolina. Petitioner is an attorney who was admitted to the bar in 1944. He entered private law practice in 1950. Until 1965, his practice consisted primarily of zoning law. On January 1, 1965, petitioner formed a law partnership with his son, Hal I. Lackey. There was no written partnership agreement. Petitioner was the senior partner and exercised managerial *107 control over the partnership business. Petitioner made the final decision as to the distribution of partnership funds, which determined the distributive share of partnership income of Hal I. Lackey. During 1966, petitioner maintained three checking accounts. He kept a joint checking account (hereinafter referred to as the "joint account") with his wife, Muriel B. Lackey, at the National Bank of Washington. The joint account was for their personal use. Petitioner kept an account in the name of Hal Lackey (hereinafter referred to as the "attorney account") at the National Bank of Washington. Either petitioner or his son, Hal I. Lackey, could issue checks on the attorney account. Fees paid to the partnership were deposited in the attorney account, and expenses were paid by checks on the account. Petitioner kept an account in the name of Hal Lackey, Trustee (hereinafter referred to as the "trustee account"), at the Maryland National Bank. Only petitioner could issue checks on the trustee account. When "contingent" fees were received by the partnership, they were deposited in the trustee account until the right to receive them became final, in petitioner's mind, at which time *108 they would be transferred to the attorney account. Clients' funds to be used for other purposes were also kept in the account. Respondent has determined that petitioner has failed to report $900 of director's fees and $23,087.07 of his distributive share of partnership income for the taxable year 1966. The sum of $23,087.07 consisted of the following: Additional income not recorded Freeman
$ 7,000.00
Multicon
3,000.00
Lubscher (shared) [3]
900.00
Marsteller
35.70
Richie (shared) [4]
9,000.00
R. Strickler
40.43
Ritterpusch (excess repaid on loan)
500.00
$20,476.13
Unidentified deposits
Joint account
$ 2,899.14
Attorney account
405.12
Income reported in excess of receipts book
(693.32)
Adjustment
$23,087.07
*109 The partnership filed a Federal partnership return of income for 1966 with the District Director of Internal Revenue, Baltimore, Maryland. Among the work papers which petitioner used to prepare the partnership return was an adding machine tape which listed the following: 15,000.00 1,057.25 3,312.50 864.00 1,191.55 13,594.69 10,615.00 3,205.25 48,840.24 - 5,000.00 - 5,000.00 38,840.24 The first eight figures represent the exact amounts of monthly deposits made to petitioner's attorney account during 1966, as shown in monthly statements of account given petitioner by the National Bank of Washington. However, the total amount of deposits for the period ending December 5, 1966, for which a statement of account was given petitioner, was not included in the adding machine tape. The two $5,000 amounts subtracted from the total represented nonincome deposits to the attorney account during 1966. However, one $5,000 deposit was made on November 16, 1966, during the period in which deposits were not reported as income. The partnership return showed the following income: Gross receipts
$38,840.24
Deductions
17,597.85
Ordinary income
$21,242.39
Partners' shares
Hal Lackey
11,942.39
Hal I. Lackey
9,300.00
*110 Petitioner also kept a cash receipts book, in which dates, sources, and amounts of payments made to petitioner were tabulated. The book contains, inter alia, the following entries for 1966: Jan. 4
Orville Richie
1,000.00
Feb. 2
B. B. Lubcher
100.00 The amounts of both entries are almost illegible, and they appear to be strikeovers of the amounts 10,000.00 and 1,000.00, respectively. In December 1963, petitioner was retained by Mr. Orville J. Richie, a builder, to obtain rezoning for certain property located in Montgomery County, Maryland. Mr. Richie agreed to pay all costs associated with the rezoning and $1,000 as a retainer. An additional $500 was payable upon presentation of the case before the county council. A contingent fee of $1,000 was payable when and if the zoning change was granted. Finally, $30,000 was to be paid contingent upon the sale or development of the property. Prior to 1965, Mr. Richie paid petitioner the $1,000 retainer, the $500 presentation fee, the $1,000 fee contingent upon rezoning, and $10,000 of the $30,000 contingent amount. Mr. Richie gave petitioner a check dated December 2, 1965, for $10,000 as an additional payment *111 of the $30,000 fee. Petitioner endorsed and deposited the check in the attorney account on January 4, 1966. On October 22, 1964, petitioner entered into an agreement with Multicon, an Ohio limited partnership, whereby he agreed to obtain rezoning for a 900-acre development project located on farm land owned by Mr. William Rapley in Montgomery County, Maryland. Multicon agreed to pay petitioner $1,500 as a retainer. This amount was paid on October 22, 1964. Multicon also agreed to pay $1,250 upon presentation of the case at the Board of Appeals and $1,250 upon presentation before the county council. Finally, $65,000 was to be paid contingent upon the approval of the rezoning. The rezoning sought by Multicon was opposed and was still pending in 1965, when petitioner was appointed to the Washington Suburban Sanitary Commission. Under the laws of Montgomery County, petitioner could not practice before the governmental bodies that regulated zoning in the county so long as he worked on the Commission. At that time, petitioner decided to end his representation of Multicon, and at his suggestion Mr. c. Edward Nicholson, an attorney with whom petitioner had worked on a number of *112 occasions, took over the case on his contract. Multicon agreed to the substitution of counsel, and Mr. Nicholson continued to pursue the case until later in 1965, at which time it became evident that the rezoning would not be approved. Mr. Nicholson was paid $1,250 for his work on the case. In 1966 there was an election in Montgomery County. Petitioner was approached by Mr. Rapley with the suggestion that funds be raised to support certain candidates. Mr. Rapley gave petitioner a check for $3,000 which he deposited in his trustee account on August 3, 1966. On August 1, 1966, Multicon issued a check to petitioner for $3,000, which he deposited in his trustee account on August 5, 1966. Petitioner arranged with a local newspaper, the Montgomery Monitor, to put out a special edition with political advertisements. He advanced the newspaper $3,500 from the trustee account to ensure the distribution. The newspaper ran a deficit on the distribution, and the advance was never returned. The remainder of the $2,500 was disbured by petitioner to various candidates. In April 1965, Carl M. Freeman Associates, Inc., engaged Mr. C. Edward Nicholson to obtain rezoning for a 27.16-acre *113 tract of land located in Montgomery County, Maryland. Mr. Nicholson was to be paid a $2,000 retainer and a fee of $14,000 which was contingent on the success of the rezoning. Although petitioner could not represent clients before zoning agencies, there was no prohibition against his associating with another attorney. Mr. Nicholson retained petitioner as co-counsel, with the approval of the client, in order to obtain the benefit of his expertise in zoning matters. Petitioner was to receive onehalf of the fees paid in connection with the rezoning. The rezoning was approved in May 1966. On August 30, 1966, Carl M. Freeman Associates, Inc., issued a check for $7,000 payable to Mr. Nicholson, who endorsed it to the order of petitioner.Petitioner deposited the check in the trustee account on September 9, 1966. The $7,000 represented petitioner's share of the contingent fee. During 1965, petitioner was retained by Mr. Bernard B. Lubcher and several associates to represent them in a dispute involving the zoning of property located in Montgomery County, Maryland. Petitioner was to receive $2,500 for his work on the zoning dispute. Mr. Lubcher and his associates issued a check *114 for $1,000 dated January 7, 1966, to petitioner. Petitioner deposited the check in the joint account on February 4, 1966. Mr. Lubcher and his associates issued a check for $1,500 dated April 4, 1966, to petitioner. Petitioner deposited the check in the attorney account on April 15, 1966. During the years 1964 through 1967, inclusive, petitioner handled landlord-tenant cases for C. M. Marsteller, Jr. Mr. Marsteller, a realtor in Silver Spring, Maryland, paid petitioner for such work. Mr. Marsteller issued a check for $35.70 dated March 15, 1966, to petitioner. Prior to August 5, 1966, petitioner issued a check in the amount of $5,000 payable to I. John Ritterpusch, Esquire, which was deposited in the trustee account of the law firm Ritterpusch and Gingell. In return, petitioner received a note in the amount of $5,500, signed by Mr. and Mrs. Edward F. Mayne. Mr. and Mrs. Mayne were the sole shareholders of Mayne Realty Co., Inc., a client of petitioner and of the Ritterpusch firm. The additional $500 represented a loan commission due petitioner. Ritterpusch and Gingell issued a check dated August 17, 1966, to petitioner in the amount of $2,900. Petitioner deposited the *115 check in the attorney account on August 19, 1966. Ritterpusch and Gingell issued a check dated August 30, 1966, to petitioner in the amount of $2,600, and the $5,500 note was canceled. Petitioner deposited the check in the attorney account on September 7, 1966.
Mr. Richard M. Strickler, a client of petitioner, issued a check for $15.43 dated September 15, 1966, to petitioner.Petitioner deposited the check in his attorney account on September 23, 1966. In 1966 petitioner received two checks in the total amount of $900 as director's fees from the Glenmont Land and Development Corporation. Petitioner failed to report the $900 in his Federal income tax return for 1966. The following deposits were made to the attorney account on the dates and in the amounts specified: Date
Amount
July 22, 1966
$ 25.00
July 22, 1966
.75
Sept. 23, 1966
6.66
Sept. 23, 1966
45.00
Nov. 15, 1996
6.66
Nov. 15, 1966
2.00
Nov. 15, 1966
5.00
Nov. 15, 1966
15.00
Doc. 1, 1966
3.45
Dec. 1, 1966
10.00
Doc. 1, 1966
285.60
Total
$405.12
The following deposits were made to the joint account on the dates and in the amounts specified: Date
Amount
Feb. 4, 1966
$ 5.50
Feb. 4, 1966
7.00
Mar. 11, 1966
13.00
Mar. 25, 1966
5.50
May 5, 1966
8.00
July 1, 1966
20.00
July 1, 1966
309.00
July 1, 1966
15.92
Aug. 12, 1966
15.22
Aug. 12, 1966
2,500.00
Total
$2,899.14
*116 On April 11, 1972, petitioner was indicted by the Grand Jury for the District of Maryland on four criminal charges. The first two counts charged, pursuant to section 7206, that petitioner made a written declaration containing statements known to be false. They involved the law partnership returns filed for taxable years 1965 and 1966, respectively. The third and fourth counts charged, pursuant to section 7201, that petitioner prepared and filed false and fraudulent joint income tax returns with the intention of evading tax for taxable years 1965 and 1966. On December 8, 1972, petitioner appeared before the United States District Court for the District of Maryland and pleaded "Guilty" to count four of the indictment, attempting to evade or defeat income taxes for taxable year 1966. The first three counts were dismissed. OPINION Respondent determined that petitioner understated his income in the amount of $23,737.07. Petitioner was a lawyer who had formed a law partnership with his son and engaged in the practice of law during 1966. He also served as a Commissioner of the Washington Suburban Sanitary Comission. Petitioner kept three checking accounts, one for his personal *117 use and two in conjunction with his law practice. In computing the gross income of the partnership for 1966, petitioner added certain deposits made to his "attorney account", and subtracted therefrom nonincome items. Petitioner also maintained a "cash receipts book" in which dates, sources and amounts of some receipts were recorded. In computing the amount of the understatement, respondent used the figures shown in petitioner's cash receipts book. [5] Any amounts not included in the cash receipts book were deemed not to have been reported by the petitioner. Consequently, the amount of the understatement of income as determined by the respondent consisted of those identified items of income deposited to the attorney account and not included in the cash receipts book, those identified items of income deposited to other accounts and not included in the cash receipts book, and miscellaneous unidentified deposits made to the attorney and joint accounts reduced by the miscellaneous income reported in excess of amounts in the cash receipts book. *118 Petitioner claims that he computed his income by totaling the deposits made to the attorney account and subtracting therefrom two nonincome items. Contrary to respondent's contention, this position is not a new one which was advanced only at trial. The testimony of respondent's own agent and memoranda of conferences held with petitioner indicate that petitioner made such a contention during the investigation of his returns. Furthermore, petitioner's contention is premised upon and supported by his working papers, particularly the adding machine tape used to compute his partnership income, which were stipulated by both parties. Respondent was aware of the existence of the tape and its importance. In fact, respondent drew the attention of the Court to the tape itself. It cannot be said that respondent was unaware of petitioner's contention as to the manner of computing his income. We have found as a fact that petitioner computed his income by reference to the deposits to the attorney account. Our finding is supported by the fact that monthly statements of account issued by the National Bank of Washington reveal total deposits in the exact amounts listed on the adding machine *119 tape, with the exception of the statement for the period ending December 5, 1966, in which $53,873.74 was deposited to the account. Respondent does not contend that the deposits for such period represented unreported income, except to the extent of $327.71 in miscellaneous deposits and the $5,000 loan subtracted on the adding machine tape as a "nonincome item". Respondent was unable to show that the items listed in the cash receipts book bore any relation to the income reported by the petitioner. Further, respondent's analysis of the entries in the cash receipts book shows that there was a large discrepancy between the items listed therein and the deposits made to the attorney account or to the other accounts. Rather than illustrating the failure of petitioner to report his income, such discrepancy suggests that the cash receipts book could not be used to determine petitioner's income for the taxable year 1966. In view of the petitioner's use of deposits to the attorney account to compute his reported income, respondent's method of computing income by adding to reported income amounts representing deposits to the account which were not listed in the cash receipts book necessarily *120 involves the double inclusion of income items. Such a method is arbitrary and unreasonable. See Vanguard Recording Society v. Commissioner,418 F.2d 829, 832 (2nd Cir. 1969); Welch v. Commissioner,297 F.2d 309, 311 (4th Cir. 1961). Consequently, the determination of the amount of understatement of income will be made without reference to the cash receipts book. Petitioner received a check for $7,000 from Mr. C. Edward Nicholson, an attorney with whom he had been associated in prior zoning cases, in payment of his share of a legal fee which was received contingent upon the successful rezoning of a tract of land on behalf of Carl M. Freeman Associates, Inc. He deposited the check in his trustee account on September 9, 1966. The $7,000 fee was not taken into income in 1966. Petitioner testified at trial that he used the trustee account to hold clients' funds and contingent fees which, in his view, did not represent current income. Items of current income were taken into income when deposited in the attorney account. At trial, petitioner conceded that the $7,000 fee should have been included in gross income for 1966. In 1966 petitioner *121 was approached by Mr. William Rapley, the owner of a 900-acre tract of land which a limited partnership, Multicon, was interested in developing. Mr. Rapley and Multicon had met political opposition to their zoning proposal, and Mr. Rapley suggested that funds be raised to support certain political candidates. Shortly thereafter, Mr. Rapley and Multicon each issued petitioner a check for $3,000, which checks petitioner deposited in his trustee account. Petitioner stated at trial that he used the $6,000 in contributions to purchase political advertisements in a local newspaper and to make direct gifts to treasurers of various candidates. Respondent's agent testified at trial that he had investigated the payments and that Mr. Rapley had confirmed petitioner's version of the payments. Respondent produced no testimony by representatives of Multicon. Petitioner had been retained by Multicon in 1964 for the purpose of having the 900-acre tract rezoned, but he withdrew from the case after his appointment to the Washington Suburban Sanitary Commission in 1965, because local law prevented his appearing before government agencies regulating zoning. Respondent contends that petitioner continued *122 to provide services for Multicon and that such work justified a $3,000 fee. But petitioner had been paid a $1,500 retainer in 1964, and Multicon was presumably entitled to receive something for its money. Any further payments under the contract were contingent upon his presentation of the case before the Board of Appeals and the Montgomery County Council, yet petitioner was precluded from appearing before such bodies.Moreover, the $3,000 figure bore no relationship to any amounts that might have been due petitioner under his retainer. In January 1966, petitioner received a $1,000 fee from Mr. Bernard B. Lubcher and associates. He deposited the check in the joint account on February 4, 1966. Petitioner failed to report the $1,000 fee as income in 1966, because he did not report any deposits made to his joint account. Petitioner handled a number of landlordtenant cases for Mr. C. M. Marsteller, Jr., a realtor. He received a number of payments in small amounts from Mr. Marsteller, which he deposited in the attorney account. He also received a payment from Mr. Marsteller of $35.70 on March 15, 1966. He did not deposit the payment in his attorney account. Consequently, he failed *123 to report the $35.70 as income in 1966. Mr. Orville J. Richie gave petitioner a check dated December 2, 1965, for $10,000 as an installment payment of a fee. Petitioner deposited the $10,000 in the attorney account on January 4, 1966. [6] Respondent claims, solely on the basis of the cash receipts book, that petitioner "shaved" the fee by $9,000 and reported only $1,000 of the amount received. We have decided that petitioner did not report his income on the basis of the cash receipts book. Instead, he used deposits made to the attorney account. The statement of account shows that $15,000 was deposited in the attorney account on January 4, 1966. The entire $15,000 was reported as income, and the $10,000 fee was included in the $15,000. Petitioner did not "shave" the fee by $9,000. *124 Petitioner received a check from Mr. Richard M. Strickler for $15.43 which he deposited in the attorney account on September 23, 1966. Respondent claims that petitioner failed to report $40.43 received from Mr. Strickler. Although the basis of the determination is unclear, presumably the $40.43 figure was derived from the $15.43 item and a deposit made by petitioner to the attorney account in the amount of $25.00 on July 22, 1966.Respondent's determination that these items were not reported is based solely on the fact that they were not recorded in the cash receipts book. However, both amounts were deposited in the attorney account and were reported as income by petitioner in 1966. Petitioner loaned Mr. and Mrs. Edward F. Mayne $5,000 in 1966. He was repaid the loan by checks in the amounts of $2,900 and $2,600, which were deposited in the attorney account in 1966. Respondent contends that the extra $500 was not reported as income in 1966, since it was not recorded in the cash receipts book. Petitioner concedes that the $500 was income in the form of a loan commission.Since the deposits were made to the attorney account, the entire $5,500 was taken into account by petitioner *125 on the adding machine tape. In computing partnership income by reason of deposits made to the attorney account, petitioner then reduced the total deposits by $5,000 in order to exclude from income repayment of the loan. Consequently, the remaining $500 was properly reported in 1966. Respondent determined that unidentified deposits in the amounts of $2,899.14 and $405.12 were made to the joint and attorney accounts, respectively. However, respondent reduced the unidentified deposits by $693.32, representing income reported in excess of the cash receipts book. Thus, the net understatement of unidentified amounts was determined by respondent to be $2,610.94. As many of the unidentified deposits to the joint and attorney accounts were of small amounts ranging from 75 cents to $25 and were not likely to have represented fees, we would be inclined to regard respondent's inclusion of these amounts as arbitary and unreasonable. However, the total includes a deposit of $2,500 made to the joint account on August 12, 1966, which petitioner was unable to explain at trial. Further, a deposit of $285.60 was made to the attorney account on December 1, 1966. It was included in the deposits *126 for the period ending December 5, 1966, which is the period for which petitioner failed to report deposits to the attorney account as income. As these two deposits exceed the net amount determined by respondent, we find that petitioner understated his income from unidentified deposits in the amount so determined. In summary, it is our conclusion that the petitioner's income from the law partnership was understated in the return filed for the taxable year 1966 in the amount of $15,646.64, consisting of the following: Source
Amount
Carl M. Freeman Associates, Inc.
$ 7,000.00
Bernard B. Lubcher and Associates
1,000.00
C. M. Marsteller, Jr.
35.70
Unidentified deposits
2,610.94
Deduction on adding machine tape
of amount not previously included
in deposits [7]
5,000.00
Income from partnership not reported
$15,646.64
*127 The remaining issue for consideration is whether any part of the resulting underpayment of taxes for 1966 was due to fraud.Petitioner was indicted and pleaded guilty to count four of the indictment, which charged that he "did willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America for the calendar year 1966, by preparing * * * a false and fraudulent income tax return * * *" in violation of section 7201. Respondent contends that petitioner is collaterally estopped from denying fraud in the preparation of the joint income tax return for 1966. A criminal conviction under section 7201 necessarily implies that the underpayment of tax for the year of the conviction was due to fraud within the meaning of section 6653(b). Moore v. United States,360 F.2d 353 (4th Cir. 1965), cert. denied, 385 U.S. 1001 (1967); John W. Amos,43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965); Arctic Ice Cream Co.,43 T.C. 68 (1964).Moreover, a guilty plea constitutes an admission of all the elements of the criminal charge. McCarthy v. United States,394 U.S. 459 (1969). *128 Consequently, it is immaterial that a conviction is based upon a guilty plea, rather than a trial on the merits. Arctic Ice Cream Co.,supra.
Petitioner contends that his plea of guilty to the criminal charge was made pursuant to North Carolina v. Alford,400 U.S. 25 (1970), as part of the plea bargaining process, and that the District Court accepted it as such.He claims that such a plea should not be used against him because of his denial at the hearing that he was guilty. In effect, petitioner would have this Court treat his plea as if it were a plea of nolo contendere. North Carolina v. Alford,supra, affords no basis for petitioner's position. In that case, the Supreme Court held that it was not unconstitutional for a court to accept a guilty plea, if it were satisfied that there was strong evidence of guilt, even though the defendant proclaimed his innocence. Thus, the Alford case did not limit the effect of a guilty plea, but instead stated the circumstances under which the plea may be received. At a hearing on the plea, the District Court called petitioner's attention to the fact that the plea was in fact a guilty *129 plea with the effect that petitioner admitted fully each and every element of count four of the indictment. The District Court required the government to show the factual basis for the plea of guilty [8] and asked petitioner on a number of occasions whether he understood that he was admitting guilt, even under the Alford case. Petitioner replied that he did. Inasmuch as petitioner pleaded guilty to the offense, he understood that he was pleading guilty to the offense at the time of the pleading, and the plea was accepted by the Court as a guilty plea, petitioner has admitted each element of the offense. Proof of guilt of the criminal charge of willfully attempting to evade tax necessarily implies that the petitioner committed a fraud within the meaning of section 6653(b). He is collaterally estopped from denying such fraud in a civil proceeding with respect to the year 1966. Moore v. United States,supra;John W. Amos,supra.Accordingly, petitioner is liable for the addition to the tax under section 6653(b). Decision will be entered under Rule 155.* Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Muriel B. Lackey is a petitioner herein solely by reason of having filed joint returns with her husband. Hereinafter, references to "petitioner" are to Hal Lackey. The respondent has conceded that Muriel B. Lackey is not liable for any addition to tax for fraud.↩
3. The stipulation of facts uses the spelling "Lubcher", which is adopted by the Court for purposes of consistency. Since respondent maintained at trial and on brief that the fees from Lubcher were "shaved", it is assumed that the parenthetical word in the notice of deficiency should be shaved rather than shared.↩
4. Since respondent maintained at trial and on brief that the fees from Richie were "shaved", it is assumed that the parenthetical word in the notice of deficiency should be shaved rather than shared.↩
5. Respondent relies in part on petitioner's alleged use of the cash receipts book to compute his income in 1964. Such a fact, if proved, would be of little probative value with respect to the method used in 1966.↩
6. It was stipulted that Mr. Richie paid the $10,000 "drawn on his account" on December 2, 1965. The stipulation is unclear as to the date petitioner received the check. However, petitioner indicates, somewhat ambiguously, in his brief that the check was received and deposited on January 4, 1966. Since petitioner failed to raise the issue as to the proper year of inclusion and since the stipulated facts are ambiguous, we are unable to find that he overreported his income by $10,000 in 1966.↩
7. Petitioner stated in his brief that one of the $5,000 subtractions represented a loan received from the National Bank of Washington and deposited in the attorney account on November 16, 1966. Since the deposit made on that date was included in the statement of account for the month ended December 5, 1966, it was not included on the adding machine tape and thus was not reported.↩
8. See Fed. R. Crim. Proc. 11↩.